25-1466
*McDevitt v. County of Suffolk*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand twenty-six.

PRESENT:
>       DENNY CHIN,
>       RICHARD J. SULLIVAN,
>               *Circuit Judges*.
>       MEREDITH A. VACCA,
>               *District Judge.*\*

———————————————————————

MICHAEL W. McDEVITT,

>       *Plaintiff-Appellant*,

>       v.                                    No. 25-1466

———————————————

\* Judge Meredith A. Vacca, of the United States District Court for the Western District of New York, sitting by designation.

SUFFOLK COUNTY DIVISION OF ENVIRONMENTAL QUALITY, SUFFOLK COUNTY POLICE DEPARTMENT, GLENN TARQUINIO, Suffolk County Police Officer in his individual and official capacities, SUFFOLK COUNTY POLICE OFFICERS JOHN AND JANE DOES #1-10, in their individual and official capacities, POLICE OFFICER ALEJANDRO SANCHEZ,

*Defendants-Appellees.*

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | CORY H. MORRIS, Law Offices of Cory H. Morris, Central Islip, NY; VICTOR J. YANNACONE, Yannacone & Yannacone P.C., Patchogue, NY. |
| **For Appellee:** | ANNE LEAHEY, Assistant County Attorney, *for* Christopher J. Clayton, Suffolk County Attorney, Hauppauge, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 11, 2025 judgment of the district court is **AFFIRMED**.

Michael D. McDevitt appeals from the district court's judgment awarding him attorneys' fees and expenses totaling $187,270 – well below the nearly $800,000 originally requested. This appeal follows McDevitt's suit brought pursuant to 42 U.S.C. § 1983, in which he was awarded $750,000 in damages (later remitted to $233,100) against Glenn Tarquinio, a Suffolk County police officer, on his claim for malicious prosecution. McDevitt also prevailed on a claim of excessive force against Tarquinio and on a claim of municipal liability against the County, though the jury awarded no damages as to the former and the district court subsequently set aside the verdict as to the latter. *McDevitt v. County of Suffolk*, No. 16-cv-4164 (GRB)(ST), 2024 WL 1270811, at *11–12 (E.D.N.Y. Mar. 26, 2024). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Section 1988(b) permits reasonable attorneys' fees and costs to be awarded to the "prevailing party" in a section 1983 action. *See* 42 U.S.C. § 1988(b). To determine a reasonable fee award, courts begin by calculating the lodestar. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Under this approach, a court must (i) set a "reasonable hourly rate" for each attorney, keeping in mind all case-specific variables; (ii) determine the number of hours reasonably expended on the

3

case; and (iii) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the "presumptively reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 228–30 (2d Cir. 2019) (internal quotation marks omitted).

"We afford a district court considerable discretion in determining what constitutes reasonable [attorneys'] fees in a given case, mindful of the court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). A "district court's determination will be reversed on appeal only for an abuse of discretion," *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014), which we have limited to situations in which a district court "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions," *Millea*, 658 F.3d at 166 (internal quotation marks omitted). "This high degree of deference is appropriate because '[w]e can hardly think of a sphere of judicial decisionmaking

4

in which appellate micromanagement has less to recommend it.'" *Lilly*, 934 F.3d at 227 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

On appeal, McDevitt contends that the district court abused its discretion when it (i) reduced the hourly rates of two of McDevitt's attorneys, Victor J. Yannacone, Jr. and Cory H. Morris; and (ii) instituted a 70% across-the-board reduction in their compensable hours. For the reasons explained below, we disagree.

**I. The District Court Did Not Abuse Its Discretion in Reducing the Attorneys' Rates.**

To begin, a district court's "choice of rates [is] well within [its] discretion." *See Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (1994). In general, an attorney's hourly rates "under [section] 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Here, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation."  *Id.* at 895 n.11.

1.  *Yannacone's Rate*

We begin our discussion with the rate requested by Yannacone, a solo practitioner who sought $367.77 per hour but to whom the district court awarded $300 instead.  *See* J. App'x at 394 (describing requested hourly rate).  The district court's primary reason for doing so rested not so much on a disagreement with Yannacone's proposed figure itself as with the method by which he calculated it.  Specifically, Yannacone arrived at his requested rate by averaging the different rates he charged for various kinds of work (*e.g.*, $750 for work performed at the partner level, $450 for work performed at the associate level, and $250 for work performed at the paraprofessional level).  To the district court, this "blended," "alternative" billing system lacked basis in law and left its calculations "rudderless."  Sp. App'x at 8, 9.  On appeal, McDevitt relies on a single Second Circuit case, *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, which he contends granted district courts the authority "to calculate [a] solo practitioner's 'reasonable hourly rate using different hourly rates'" for

6

partner-, associate-, and paralegal-level work. Reply Br. at 2 (citing 450 F.3d 91, 99 (2d Cir. 2006)).

But *McDonald* did the opposite. There, we noted that the "application of a blended hourly rate in calculating the lodestar figure has not been endorsed in our decisions." *McDonald*, 450 F.3d at 98 (citing *SEC v. Goren*, 272 F. Supp. 2d 202, 208 (E.D.N.Y. 2003) (a blended rate "risks under- or over-compensating . . . professionals for their efforts")). We then concluded that a "blended hourly rate" is not appropriate for solo practitioners, and, indeed, "appears never to have been applied to a solo practitioner by any court in this Circuit." *Id.* at 98. Thus, in rejecting Yannacone's proposed rate because he arrived at it by using an impermissible method, the district court did not abuse its discretion.

As to the *content* of Yannacone's requested rate, the district court noted that counsel had offered "precious few relevant examples" of his previous rates to justify the $367.77 amount, instead relying principally on his own declarations. Sp. App'x at 8; *see also* J. App'x at 394 (requesting hourly rate). But as the Supreme Court has noted, an attorney carries the burden of proving his per-hour fee, providing not just "[his] own affidavits" but additional "satisfactory evidence" in support of it. *Blum*, 465 U.S. at 896 n.11. In the absence of such evidence, it was

7

not inappropriate for the district court to deny Yannacone's requested figure and instead award a rate within the range provided by the caselaw, albeit at the lower end. *See, e.g.*, *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 550 (E.D.N.Y. 2025) ("The Eastern District of New York has held that [i]n this district, hourly rates generally range from $300.00 to $450.00 for partner-level attorneys.") (internal quotation marks omitted)); *HSBC Bank USA v. Bell*, No. 24-cv-7671 (PCG), 2026 WL 601891, at *9 (E.D.N.Y. Jan. 27, 2026), *report and recommendation adopted as to fee award*, 2026 WL 601891, at *2 (E.D.N.Y. Mar. 2, 2026) (awarding rate of $312.64 to an attorney with "26 years of experience" after finding that it "aligned with reasonable hourly rates" in the Eastern District); *Rueda v. A & G Iron Works Corp.*, No. 25-cv-1791 (MKB), 2026 WL 183692, at *17 (E.D.N.Y. Jan. 23, 2026) ("[C]ourts in this District have recognized . . . ranges . . . of $300–$450 per hour for partners . . . with 20 or more years of experience.") (citations and internal quotation marks omitted)); *but cf. Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241 (E.D.N.Y. 2025) (prescribing inflation-adjusted rates as $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals).

2.    *Morris's Rate*

With regard to the per-hour rate reduction for Morris, the district court likewise acted within its permissible range of discretion. Morris, who was admitted to the bar in September 2013 and conducted most of the trial, requested $450 for his hourly rate. In support, he offered evidence that he was "awarded fees at a $500 hourly billing rate" in an action in state court "against Suffolk County," McDevitt Br. at 28, and caselaw on forum rates in the Eastern District, including a district court opinion endorsing figures in the range of $450–$650, *see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. at 241.

For its part, the district court justified its denial of this rate by first detailing past rates Morris had received in the Eastern District in 2016 ($150) and in 2019 ($225). The district court also pointed to Morris's errors in the litigation and his lack of experience. *See* Sp. App'x at 7 (describing Morris as laboring "admirably, if at times naively, often exposing his lack of experience" and quoting Morris as saying "I have learned more about *Monell* over the past 72 hours than I ever thought I would . . . I will be pleading cases much differently after this one").

On this record, we cannot say that the district court abused its discretion in awarding Morris a $300 hourly rate. An attorney's "experience" and

9

"performance," including errors committed during the trial, are permissible factors for a district court to consider in calculating an award for attorneys' fees. *Lilly*, 934 F.3d at 232; *see also Farbotko v. County of Clinton*, 433 F.3d 204, 209 (2d Cir. 2005) (defending rate reductions on the basis of an attorney's "experience and skill"). And while on the low end, the awarded rate falls within the range "of $300[] to $450[]" that courts in the Eastern District have identified for partners. *See, e.g., Prime Contractors Inc.*, 786 F. Supp. 3d at 550.

## II. The District Court Did Not Abuse Discretion When It Ordered a 70% Reduction in Hours.

When a district court calculates the "presumptively reasonable fee" for an award of attorney's fees, it must also ensure the reasonableness of the number of hours billed. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 187–89 (2d Cir. 2008); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). Taking into account its "overall sense" of the suit, *Fox*, 563 U.S. at 838, the district court should adjust hours to account for the "important factor of the 'results obtained,'" so that fees are awarded, in general, for only "prevailing" claims. *Hensley*, 461 U.S. at 434. And if a district court otherwise finds "excessive, redundant, or . . . unnecessary" hours, *id.*, it retains "broad discretion to impose an across-the-board reduction" of compensable hours, *Raja v. Burns*, 43 F.4th 80,

10

91 (2d Cir. 2022). But when it does so, it must provide a "reasoned and thorough explanation for its decision." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 65 (2d Cir. 2014).

Here, to justify the 70% reduction in the attorneys' hours, the district court first explained that although McDevitt did achieve "significant but limited success" in the lawsuit, counsel's time spent on successful claims comprised a small minority of their total billed hours. Sp. App'x at 11 ("[M]ost of the claims pursued by plaintiff failed[,] [d]espite the broad allegations, numerous defendants, and sweeping litigation approach."). On appeal, McDevitt disputes this characterization of the suit's success, emphasizing the (pre-remittitur) size of the damages award and the favorable verdicts on malicious prosecution and municipal liability. McDevitt Br. at 2–3.

But while it is true that McDevitt received significant damages on the malicious prosecution claim, it was not an abuse of discretion for the district court to reduce the award to account for the non-successful claims and the remittitur. The Supreme Court has long held that the "degree of success obtained" is the single "most critical factor" in assigning attorneys' fees. *Hensley*, 461 U.S. at 436. Thus, "[w]here [a] plaintiff has failed to prevail on a claim[,] . . . the hours spent

11

on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. And though "a plaintiff who has won substantial relief should not have his [attorneys'] fee reduced simply because the district court did not adopt each contention raised," a plaintiff who "achieved only limited success" should receive "only that amount of fees that is reasonable in relation to the results obtained." *Id.* Additionally, successful claims that result in mere nominal damages due to a plaintiff's "failure to prove an essential element of his claim for monetary relief" should usually receive "no fee [award] at all," *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), although fee awards "need not be proportionate to the amount of damages a . . . plaintiff actually recovers," *Raja*, 43 F.4th at 89.

These rules clearly govern here. Of the numerous federal and state claims McDevitt filed against a dozen police officers and two county divisions, he ultimately won damages on only one claim. *McDevitt*, 2024 WL 1270811, at *1–2. This means that only one of the five federal claims he filed resulted in a damages award – a success rate of just 20%; indeed, that percentage would be even lower if we were to include the unsuccessful state law claims. McDevitt's two other favorable verdicts – on excessive force and *Monell* – resulted in only nominal damages. *Id.* (referencing *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)).

12

And the *Monell* verdict was promptly dismissed on a post-trial motion. *Id.* at *12.

Given this mixed record, we cannot say the district acted unreasonably – much less that it abused its discretion – in reducing the attorneys' hours "in relation to the results obtained." *Hensley*, 477 U.S. at 440.

To further support the fee award, the district court also pointed out the excessive degree to which counsel billed "inappropriate" and "baffling" items, Sp. App'x at 10, including time spent on "post-discovery state FOIA litigation," "communications with *Newsday*," "amicus issues," and tasks such as reading "*Jimmy the King*, a mass market book about former police chief James Burke." *Id.* at 2–10. The district court also pointed to entries it deemed "[v]ague and incomprehensible," such as hours billed for "consideration of Trotta finesse" and the "ten commandments of depositions." *Id.* at 10.

On appeal, McDevitt does not dispute the district court's characterization of these examples, which are plain from the record. *See* J. App'x at 16–17, 127–28, 120, 126, 134. Instead, he offers largely conclusory assertions that such entries were justified, claiming that if the district court had understood counsel's "complex trial strategy" it would have grasped why they expended hours on these items. McDevitt Br. at 13. But McDevitt's sole explanation for the "ten commandments

13

of depositions" entry was that "Attorney Yannacone has lectured widely on deposition strategy, particularly taking the testimony of hostile medical, scientific, and technical experts," and that the phrase "identifie[d] the core elements of a complete deposition." McDevitt Br. at 22. He made no attempt to explain what was meant by "consideration of Trotta finesse" and reading "*Jimmy the King*." Sp. App'x at 8, 10. And since "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," *Hensley*, 461 U.S. at 437, his silence is fatal to his argument.

Because the district court explained how billing defects pervaded the fee application, it was well within the court's discretion to deduct a "percentage of the number of hours claimed" to account for these defective entries, especially given the suit's limited overall success. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with . . . surplusage, the court has discretion . . . [to] trim[] fat from a fee application." (internal quotation marks omitted)).

As for the 70% figure the district court settled on – which is an admittedly steep reduction – we note that such deductions are by no means unusual in this Circuit. For example, we affirmed a 50% across-the-board deduction in *Matusick*, 757 F.3d at 64, due to a "lack of detail in the billing records" alone; a series of 50%

14

deductions in *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 238 (2d Cir. 1987), due to "voluminous" billings on quasi-administrative items and travel time; and an 80% across-the-board deduction in *Guardians Ass'n of Police Department of New York City v. City of New York*, due to "facially excessive" hours and "vague[]" time records, 133 F. App'x 785, 786 (2d Cir. 2005). At the district level, courts in the Circuit also routinely apply deductions of 70% or more for suits with similar records of success and comparable billing defects. *See, e.g.*, *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 662 (S.D.N.Y. 2019) (66% reduction in first two attorneys' hours and 70% reduction in third attorney's hours for suit in which only 34% of plaintiffs recovered substantial damages); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 359 (W.D.N.Y. 2012) (70% reduction for, among other things, counsel's "failure to use billing judgment"); *Ozbakir v. Scotti*, 906 F. Supp. 2d 188, 200 (W.D.N.Y. 2012) (75% reduction for counsel's duplicative billing practices). Given the breadth of this caselaw, we cannot see how a reduction that is clearly within the range of "permissible decisions," *Millea*, 658 F.3d at 166 (internal quotation marks omitted), would amount to an abuse of discretion.

We have said that a district court "is in a far better position to make [fee] decisions than is an appellate court, which must work from a cold record."

*McDaniel v. County of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010) (internal quotation marks omitted). Given our necessarily deferential review of the record in this case, we cannot say that the district court abused its discretion in reducing the counsel's rates and total percentage of hours by 70%. *See Kirsch*, 148 F.3d at 173.

*      *      *

We have considered McDevitt's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court